# STATE v. PAUL C. WARE.

126 N. W. (2d) 429.

January 10, 1964—No. 38,764.

*Paul H. Ray,* for relator.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *George M. Scott,* County Attorney, and *Per M. Larson,* First Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Writ of error to review an order of the District Court of Hennepin County which denied defendant's petition for a writ of error coram nobis. It is defendant's contention that at the time he entered a plea of guilty to the crime of murder in the second degree he was inadequately represented by counsel; and that the court should have set aside such plea on the ground that the evidence brought out in the presentence hearing conclusively established that he had not *intentionally* fired a Browning 9-millimeter pistol in the Northside Inn in Minneapolis on October 9, 1959, about 10 p. m., which had brought death to one Reuben Belzer and had wounded a policeman who was attempting to arrest defendant; and that further inquiry by the court at that time would have established that he was guilty of no greater offense than murder in the third degree.

The record discloses that defendant had been charged with murder in the first degree, to which he entered a plea of not guilty; that on December 7, 1959, when he appeared for trial with his counsel, Mr. Lewis Lohmann, public defender for Hennepin County, he withdrew such plea and entered a plea of guilty to a charge of murder in the second degree; that he was then arraigned on a charge of a prior conviction for the crime of armed robbery, to which charge he entered a plea of guilty. He was then interrogated as follows:

"By Mr. Lohmann:

"Q. Mr. Ware, you and I discussed this charge of murder which has been brought against you?

"A. We have.

"Q. And I told you that you were entitled to a jury trial and that there would be a presumption of innocence that would follow you throughout a hearing * * *?

"A. That's right.

"Q. And I also told you that the penalty for this offense * * * was fifteen to forty years in the State of Minnesota?

"A. Yes.

\* \* \* \* \*

"Q. And I also told you that by reason of the prior conviction * * * the Court * * * could double that penalty he could give you thirty to eighty years?

"A. Yes.

"Q. * * * I made you no threats, no promises of any kind to induce you to make this plea?

"A. No, you didn't.

"Q. Did anyone else?

"A. No.

\* \* \* \* \*

"Q. Now, on or about the 9th day of October, 1959 you were in the Northside Inn in the City of Minneapolis, in the evening?

"A. Yes, that's right.

"Q. And you had a gun and you pulled that gun and the police came in and there was a promiscuous shooting and you shot and shot a policeman and you shot this man, is that right?

"A. Yes.

"Q. And this man, a Reuben Belzer, who was a bystander there, he died as a result of that bullet wound and you know that, he was dead in the place, wasn't he?

"A. Yes.

\* \* \* \* \*

"The Court: He [the man killed] wasn't engaged in this argument at all?

"Mr. Lohmann: No, he was sitting on the bar and the police came in and there was this promiscuous shooting, and this man was—you were hit three times yourself, weren't you?

"A.   Yes.

"Q.   Will you show the Court—just pull up your shirt and show him where you were hit.

"(Witness pulls up shirt and exposes upper portion of body to the Court.)

*     *     *     *     *

"By Mr. Scott [county attorney]:

*     *     *     *     *

"Q.   Will you tell us what type of gun you had that evening?

"A.   45 caliber.

*     *     *     *     *

"Q.   Was it loaded?

"A.   It was.

"Q.   How many rounds did you have in it?

"A.   Nine.

"Q.   Nine rounds. Did you have an argument with the waitress in the Northside Inn at 546 Olson Highway, City of Minneapolis, * * * on October 9, 1959, roughly at 9:00 p. m.?

"A.   Yes.

*     *     *     *     *

"Q.   Then when the police came did they ask you to drop the gun?

"A.   Yes.

"Q.   Did you make the statement in substance, 'Come on, and we will go together.'?

"A.   No."

The county attorney then called witnesses who testified as follows:

Testimony of Frane Johnson

"Q.   [By Mr. Scott] Your name is Frane Johnson? And you are with the Bureau of Information with the City of Minneapolis police department * * *?

"A.   Bureau of Identification.

*     *     *     *     *

"Q.   * * * Did you recover a nine millimeter Browning pistol at the Northside Inn in the City of Minneapolis, on October 9, 1959?

"A.   Yes.

"Q.   Did you also recover nine expended rounds of nine millimeter ammunition?

"A.   I received those from Detectives Ryman and Nelson in the Courthouse.

\*   \*   \*   \*   \*

"A.   \* \* \* on the \* \* \* following \* \* \* morning about 1:10.

"Q.   Now, what did you do with these rounds and the weapon?

\*   \*   \*   \*   \*

"A.   I took them to the State Crime Bureau.

"Q.   And do you know who examined them over there?

"A.   Mr. Barron.

\*   \*   \*   \*   \*

"Q.   And did you also take pictures and also make an investigation showing a bullet hole through the bar of the Northside Inn coming from the direction where the Browning pistol was located to the place where Reuben Belzer was sitting?

"A.   Yes.

\*   \*   \*   \*   \*

"Q.   In other words, the examination was to show that this bullet [that] came from the direction where the defendant was is the one that killed Reuben Belzer \* \* \*?

"A.   Yes.

\*   \*   \*   \*   \*

"Q.   And did you receive a bullet from Dr. Guthrie?

"A.   Yes sir.

\*   \*   \*   \*   \*

"Q.   And you received that from Dr. Guthrie at the Hennepin County Morgue?

"A.   Yes sir.

"Q.   And he had extracted that bullet from the dead man, Reuben Belzer, is that correct?

"A.   Yes sir.

"Q.   And you took that to Dave Barron at the State Crime Lab also?

"A.   Yes sir."

Testimony of Mr. David Barron

"Q. [By Mr. Scott] Will you repeat your name and occupation please?

"A. David Barron, crime laboratory analyst, and I am employed by the State of Minnesota, the Bureau of Criminal Apprehension.

"Q. * * * did you receive a bullet marked, J. C., from Frane Johnson who just testified?

"A. Yes sir.

\* \* \* \* \*

"Q. Did you also receive a Browning nine millimeter weapon from Frane Johnson?

"A. Yes sir.

\* \* \* \* \*

"Q. Did you make any examinations concerning the bullet and that gun?

\* \* \* \* \*

"A. I found that the bullet had been fired from the submitted weapon.

\* \* \* \* \*

"Q. Did you also receive nine expended rounds from that gun, or shells from a Browning nine millimeter gun?

"A. Yes."

Testimony of Dr. William G. Guthrie

"Q. [By Mr. Scott] Doctor, you are Dr. William G. Guthrie, the Hennepin County Coroner, is that correct?

"A. Yes * * *.

"Q. * * * in your official capacity I understand that you * * * did an autopsy on one Reuben Belzer, is that correct?

"A. That is correct.

"Q. * * * tell us the cause of death as a result of your examination and your autopsy of Reuben Belzer?

"A. The cause of death was hemorrhaging into the chest cavities as a result of a tear or perforation of the arch of the aorta caused by a bullet.

"Q. Now, how was this bullet or where was this bullet recovered?
"A. The bullet was recovered from the right shoulder, to the end of the long bone of the arm in the right shoulder."

The court then imposed the following sentence:

"* * * It is considered and adjudged that you, Paul C. Ware, as punishment for the crime of murder in the second degree to which you have pled guilty and to a prior conviction to which you have pled guilty shall be confined at hard labor in the State Penitentiary at Stillwater, Minnesota, until from thence discharged by due process of law or released by competent authority.

"Mr. Scott: May I just ask one question of the defendant. Showing you this Browning nine millimeter, is that the gun that you had that night?
"A. Yes, yes sir."

In an affidavit dated September 29, 1961, filed in support of the petition herein, defendant avers that subsequent to his arrest on October 9, 1959, he had been held in a hospital for a number of weeks and was unaware that he had been charged with murder in the first degree; that when he appeared for arraignment on this charge he had been without counsel but had entered a plea of "not guilty" to such charge; that subsequently the court had appointed Lewis Lohmann as his counsel; that before entering his plea of "guilty" to the charge of murder in the second degree he had had only two short conversations with such counsel wherein no effort had been made to ascertain defendant's recollection of the facts; that the only matter discussed was the difference between the penalty for murder in the first degree and the penalty for murder in the second degree; and that his counsel had prevailed upon him to agree to enter a plea of "guilty" to a charge of murder in the second degree, advising him that the state had a "first class case" against him for murder in the first degree. It is apparently defendant's position that had some effort been made by his counsel or by the court at that time to ascertain the facts it would have been disclosed that defendant had not fired the Browning 9-millimeter pistol while conscious or with the design to kill anyone.

As to the events that occurred October 9, 1959, defendant admitted in his affidavit that he had been present in the Northside Inn at that time; that he then had had in his possession the Browning 9-millimeter pistol loaded with 9 bullets; that while there he had become involved in an argument with a waitress and shortly thereafter had commenced talking to the bartender; that while talking to the latter he had had his hand on the pistol but had not pointed it at anyone; that shortly after such argument and discussion police officers had entered and pointed a gun at him; that the next thing that happened was that he had been struck by 3 gunshots and had fallen unconscious to the floor; that he now distinctly remembers not having fired his pistol at any time while he was conscious; and that at the time he entered his plea of "guilty" he had been under sedation and suffering pain from the gunshot wounds described.

■ We find no merit in defendant's present contentions. The evidence submitted under oath in connection with his plea of "guilty" to the charge of murder in the second degree clearly indicates that at the time of the shooting he had withdrawn the loaded pistol from his pocket and, after being ordered to drop it, had fired it in the direction of one of the policemen attempting to arrest him, wounding him and killing a bystander. There is nothing in the record made at that time which in any respect would lend support to the contention now made by defendant, some 4 years after his sentence, that his firing of the 9 bullets from the pistol had been accidental or due to some reflex movement made by him while he was unconscious. Under the evidence described, the court could and did properly accept his plea of "guilty" to the charge of murder in the second degree and imposed sentence therefor upon him.

■ Under Minn. St. 619.08,[1] which defines murder in the second degree, "a design to effect the death of the person killed or of another" must be shown, but it is not essential that deliberation or pre-

---

[1]Minn. St. 619.08 provides in part: "Such killing of a human being, when committed with a design to effect the death of the person killed or of another, but without deliberation and premeditation * * * is murder in the second degree * * *."

meditation be present. It is of interest to note that facts such as those above described have been held adequate not only to support an inference or finding of design to kill, but adequate to support an inference or finding of *premeditation* sufficient to establish murder in the first degree as defined in § 619.07.[2] State v. Keaton, 258 Minn. 359, 104 N. W. (2d) 650, 86 A. L. R. (2d) 649; State v. Gowdy, 262 Minn. 70, 113 N. W. (2d) 578; State v. Gavle, 234 Minn. 186, 48 N. W. (2d) 44; State v. Bucanis, 26 N. J. 45, 138 A. (2d) 739, 73 A. L. R. (2d) 760; 1 Wharton, Criminal Law and Procedure, § 267; 9 Dunnell, Dig. (3 ed.) §§ 4226 to 4229. Thus, in State v. Gavle, 234 Minn. 186, 197, 48 N. W. (2d) 44, 51, this court stated:

"Premeditation, being a process of the mind, and a design, likewise being a product of the mind, are wholly subjective and hence incapable of direct proof. They must be inferred from objective manifestations."

Likewise, in State v. Gowdy, 262 Minn. 70, 75, 113 N. W. (2d) 578, 581, which involved murder in the first degree and where contentions similar to those herein were made by defendant there, it was said:

"* * * Premeditation may be inferred from all the circumstances surrounding the homicide. Nor is it necessary that the design to effect death exist for any specific length of time. Here the evidence establishes beyond any doubt that defendant and Brewer entered the store armed with loaded revolvers, ready to shoot, if necessary, anyone who obstructed their purpose of robbing the store; that in an attempt to escape capture defendant shot at several people; and that at arm's length he discharged his loaded revolver into a vital area of the body of Sergeant Herkal, causing his immediate death. From these facts an inference is clearly permissible that defendant had a premeditated design to shoot and kill anyone who got in his way."

■ Under these decisions, the evidence submitted at the time of

---

[2]Minn. St. 619.07 provides: "The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when perpetrated with a premeditated design to effect the death of the person killed or of another, and shall be punishable by imprisonment for life in the state prison."

defendant's plea and sentence would properly support an inference of his *premeditation,* as well as his *design* to kill at the time of the shooting, sufficient to sustain a verdict of "guilty" to the charge of murder in the first degree had he elected to stand trial therefor. Accordingly, the advice of his counsel to enter a plea of "guilty" to the lesser charge, rather than to risk conviction of murder in the first degree, was sound and in the best interests of defendant, and refutes his present contention that he had been inadequately represented by such counsel at the time.

■ Finally the record reveals nothing whatever to substantiate defendant's present claim that because of sedation and pain arising from wounds he had received in the shooting affray he had been unable to fully comprehend the nature of the proceedings described at the time he had entered his plea therein. On the contrary, his responses to the questions then asked of him establish his full understanding of the nature of such proceedings and his detailed recollection of the facts giving rise thereto. See, State v. Gowdy, 262 Minn. 70, 113 N. W. (2d) 578.

Affirmed.