## STATE v. JOHN R. MITCHELL.

163 N. W. (2d) 310.

December 6, 1968—No. 41024.

*F. Lee Bailey, Robins & Meshbesher,* and *Ronald I. Meshbesher,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *David C. Weinberg, Harlan W. Goulett,* and *Henry W. McCarr, Jr.,* Assistant County Attorneys, for respondent.

SHERAN, JUSTICE.

Appeal from a judgment of conviction of the crime of manslaughter in the first degree and from an order of the district court denying defendant's motion for judgment of acquittal notwithstanding the verdict or for a new trial.

On December 26, 1966, shortly before 3 a. m., the lifeless body of Nancy Mitchell, bruised and apparently beaten about the head, was discovered amid smoke and flames on the living room floor of the Mitchell home in south Minneapolis. Firemen who had responded to an alarm initiated by defendant, Dr. John R. Mitchell, notified the police. The detectives assigned to the case interviewed Mitchell at about 4 a. m. at Hennepin County General Hospital where he had been taken by ambulance for relief from the effects of smoke inhalation. On the following day a complaint was filed charging Mitchell with having killed his wife. At the preliminary appearance in the Municipal Court of Hennepin County on December 28, the date of January 12, 1967, was fixed as the time for a preliminary hearing. This preliminary hearing was never held because the grand jury of Hennepin County, on January 10, 1967, returned an indictment charging defendant with murder in the first degree. An arrest warrant was issued by the clerk of Municipal Court of Hennepin County and was executed January 11. But for the indictment, no attempt was made to establish judicially probable cause for this arrest.

Upon arraignment in the district court, defendant, without waiver of the jurisdictional question, pleaded not guilty to the indictment. Trial commenced May 25, 1967. The jury returned a verdict of guilty of manslaughter in the first degree, and the judgment of conviction was entered.

Upon appeal it is contended that defendant is entitled to a new trial because:

(1) Defendant was prejudiced because the county medical examiner, called as an expert witness by the state, expressed the opinion that the victim's death resulted from strangulation "performed from behind."

(2) Statements made by defendant to police officers at the hospital were received in evidence against him notwithstanding the fact that the statements were made before he was notified of his constitutional rights in the manner required by Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694.

(3) The indictment by which defendant was charged with the crime of murder in the first degree was returned by a grand jury, the members of which were selected by a process which failed to meet state and Federal constitutional standards.

(4) The failure to afford defendant a preliminary hearing where one had been demanded and scheduled deprived defendant of due process and equal protection of the laws contrary to the requirements of the Federal and State Constitutions.

(5) The district court lacked jurisdiction over defendant becuase the warrant pursuant to which he was arrested was not issued by a judicial officer and was not supported by an adequate showing of probable cause for arrest.

■ Dr. John I. Coe was called originally by the state in support of its case in chief. He is a physician admitted to practice in the State of Minnesota for over 20 years and a specialist in anatomic pathology. He serves as chief of pathology and director of laboratories for the Hennepin County General Hospital. He has personally performed over 2,000 autopsies and participated in between 8,000 and 9,000. His experience includes the observation of over 200 cases of death from strangulation, including approximately 10 instances of homicidal stran-

gulation. Together with Dr. Calvin N. Bandt, his deputy, he performed an autopsy on the person of Nancy Mitchell on December 27, 1966, noting with particular reference to the neck and cervical region of the spine: (1) An area of hemorrhage in the skin over the fifth cervical vertebra; (2) areas of hemorrhage in the muscle surrounding the spinal column of the neck; (3) hemorrhages in the sternocleidomastoid muscles "behind the angles of the jaw * * * on both sides"; (4) two fractures of the cricoid cartilage of the larynx with extensive hemorrhage; (5) fracture of the hyoid bone with hemorrhage at the site of this fracture; (6) signs of asphyxiation.

Upon these findings and the fact that the blood showed no evidence of carbon monoxide, the doctor expressed the opinion upon direct examination as a part of the state's case in chief that death had resulted from manual strangulation. There was no objection made to the expression of this opinion by the pathologist. His qualifications from the standpoint of education and experience are not questioned in relation to this opinion.

Defendant claimed that the strangulation was self-inflicted. With the case in this posture, Dr. Coe was recalled by the state in rebuttal. At this juncture, defendant reasons, the jury had two possible theories to consider in trying to determine cause of death: (1) That Nancy Mitchell died as a result of manual strangulation at the hands of her husband, or (2) that her death was a result of manual strangulation by her own hand.

Preliminary inquiry was made by the state during the course of which Dr. Coe repeated the findings noted during his direct examination. In addition, he testified to having found hemorrhage in the strap muscles of the neck, after which a colloquy occurred between the court and counsel with respect to the scope of the inquiry then permissible. From this exchange it was made clear that the prosecution intended to elicit from the witness his opinion that the decedent had not strangled herself. The trial judge expressed his concern about this prospective interrogation upon the ground that the prosecuting attorney in framing his questions had proposed, in effect, that the witness take into consideration all the evidence which he had heard adduced during the course of the trial. He

also was concerned lest such an opinion be "invading the province of the jury." The attorneys for the defendant urged that the expression of the opinion by the witness would be improper in any event. The trial judge stated: "He can be asked up to the point of whether or not he has an opinion, then at that point it changes. You can then object on the grounds that there is not a sufficient foundation." The record then reads:

"Q. [By the state] Doctor, you have reviewed for us the distribution of injuries to the neck.

"A. Yes, sir.

"Q. What do they indicate to you?

"A. They indicate to me death by a manual strangulation; and, *further, that this was performed from behind.*" (Italics supplied.)

The attorneys for the defendant moved that the opinion expressed be stricken. The court directed that the phrase "performed from behind" be stricken. Defendant moved for a mistrial upon the ground that the prosecution had improperly elicited the objectionable opinion. This motion was not granted. Cross-examination by the defendant did not relate to the stricken testimony.

In presenting the case to the jury, a principal contention of the state was that the defense theory of self-inflicted manual strangulation was incredible. The defendant's attorney argued otherwise. Neither referred to the stricken testimony. The trial judge instructed the jury specifically that evidence received and subsequently stricken should be disregarded.

We do not believe that the trial court erred in refusing to grant defendant's motion for a mistrial on account of the testimony in question. At the outset we believe that the opinion expressed was a proper one.[1] As stated in People v. Cole, 47 Cal. (2d) 99, 104, 301 P. (2d) 854, 857, 56 A. L. R. (2d) 1435, 1442:

"* * * [T]he subject of self-inflicted wounds is not one of such com-

---

[1] See, Donnelly v. St. Paul City Ry. Co. 70 Minn. 278, 73 N. W. 157; State v. Potoniec, 117 Minn. 80, 134 N. W. 305; Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133; Backman v. Fitch, 272 Minn. 143, 137 N. W. (2d) 574.

mon experience that laymen may not be assisted by the opinion of a doctor, who has special knowledge regarding anatomy and injuries to the human body."

Again:

"* * * Very few persons have any knowledge or experience with reference to death caused by strangulation. Without the testimony of medical experts, the jury would have been entirely in the dark on this subject." Miller v. State, 9 Okla. Cr. 255, 265, 131 P. 717, 721, L. R. A. 1915A, 1088.

See, also, Annotation, 56 A. L. R. (2d) 1447.

It was upon defendant's motion that the opinion of Dr. Coe was stricken. The trial judge made it as clear to the jury as it is possible to do that the stricken testimony should not be considered. Defendant's counsel had the option of following the course which he did pursue with respect to this testimony or of seeking to counteract its implications by cross-examination and through the testimony of another expert pathologist who had examined the body at his request. This was a tactical decision, the soundness of which we do not question. But we do not believe that the interest of justice would be served by requiring a retrial of this case now that the verdict is known upon the theory that testimony properly received but stricken upon motion of the defendant caused prejudicial error.

■ Testimony was received at trial to the effect that in response to questions put to him by Minneapolis Police Officers Robert J. O'Rourke and Russell J. Krueger during the December 26th conversation at Hennepin County General Hospital, defendant stated that before the fire he and his wife had become involved in an argument as a consequence of which he had struck her and that he thought the fire had been set by her in retaliation.

These statements attributed to the defendant by this testimony were made by defendant without compulsion before he was given the warning of constitutional rights required by Miranda v. Arizona, 384 U. S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. ed. (2d) 694, 706:

"* * * [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

In a footnote, the court explained:

"This is what we meant in Escobedo [Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977] when we spoke of an investigation which had focused on an accused."

In our opinion, the testimony was properly received. Dr. Mitchell was not in custody when the statements were made, and the investigation had not "focused" on him at that time. He had been taken to the hospital by Dr. William C. Meyer for medical observation. It is true that the investigating officers knew or had reason to know before they went to the hospital that Nancy Mitchell's death was a homicide and that the fire at the Mitchell home was a result of arson in which gasoline was employed; that Dr. Mitchell was probably the only person, other than his wife and small daughter, in the house at the start of the fire; and that his shoes, left at a neighbor's shortly after the fire started, had a strong gasoline odor. On the other hand, they knew or had reason to assume that Dr. Mitchell was apparently a respected family man who, in the ordinary situation, would not be disposed to take his wife's life but would, instead, be most anxious to assist by giving all possible information to police officers searching for the cause of the death. The preliminary inquiry made at the hospital was an essential part of the investigative process. With the limited knowledge which they possessed before talking to Dr. Mitchell, any assertion on their part indicating to him that he was a prime suspect would have been rash or, at least, imprudent. The impact of such a warning at that stage [2] and the charge

---

[2] The warning prescribed by Mr. George Scott, County Attorney of Hennepin County, to be given by police officers is as follows: "The constitution requires I inform you that:

implicit in the making of it becomes apparent if we stop to consider what the reaction of a person in Dr. Mitchell's position would have been if he had had an explanation which would have exonerated him completely. He was not under arrest. Although he was hospitalized, his freedom had not been restrained by the officers in any way. He was merely responding to the routine inquiry that police officers must make and which a husband would ordinarily insist that they should make upon discovering his wife burned, beaten, and lifeless in the family domicile. The situation altered radically when Dr. Mitchell told police officers the facts related in their testimony. His acknowledgement of a prehomicide quarrel resulting in a physical altercation changed the situation from one where the police officers were speaking to a presumably innocent and bereaved husband anxious to cooperate in the solution of a violent crime to one where they were justified in placing him under arrest. As soon as matters reached that point, defendant was warned fully of his constitutional rights. No further statements were made or solicited.

Our conclusion that this testimony was properly received is adequately supported by the available case authority.[3] To hold otherwise would be to condemn and curtail noncustodial inquiry by police officers from the persons most interested and best able to help in solving crimes.

■ Defendant contends that the grand jury selection system used in Hennepin County is unconstitutional. He argues that the selection of grand jurors from a list of persons submitted by individual judges of the district on the basis of their personal knowledge of such persons results in consistent omission from the grand jury of members of the middle

---

"(1) You have a right to remain silent.

"(2) Anything you say will be used in court as evidence against you.

"(3) You are entitled to talk to a lawyer now and have him present now or at any time during questioning.

"(4) If you cannot afford a lawyer, one will be appointed for you without cost."

[3] See, for example, Tillery v. State, 3 Md. App. 142, 238 A. (2d) 125; People v. Gilbert, 8 Mich. App. 393, 154 N. W. (2d) 800; State ex rel. Berger v. District Court, 150 Mont. 128, 432 P. (2d) 93; State v. Davis, 108 N. H. 45, 226 A. (2d) 873; State v. Zucconi, 93 N. J. Super. 380, 226 A. (2d) 16.

and lower socioeconomic groups in our society, including such minority groups as Negroes, and therefore this system violates the due process and equal protection clauses of U. S. Const. Amend. XIV, as well as Minn. Const. art. 1, § 7.

We have decided adversely to defendant's position in State v. Dilliard, 279 Minn. 414, 157 N. W. (2d) 75, holding that the Hennepin County grand jury selection procedure was not constitutionally invalid. See, also, State ex rel. Bush v. Tahash, 281 Minn. 244, 161 N. W. (2d) 326.

■ The failure of the state to afford defendant a preliminary hearing did not constitute a violation of the due process and equal protection guarantees of the Federal and State Constitutions. In Minnesota, a grand jury indictment is mandatory in cases where a defendant is to be charged with the crime of murder in the first degree. It is only in situations where the maximum punishment is not life imprisonment that procedure upon information is permitted under the statute. Minn. St. 628.32. See, State v. Keeney, 153 Minn. 153, 189 N. W. 1023; State v. McGraw, 163 Minn. 154, 203 N. W. 771.[4] The penalty for murder in the first degree is imprisonment for life. § 609.185. This being so, the county attorney had no choice but to seek an indictment. Defendant received the same procedural treatment as anyone else similarly situated would have received.

When the accusation is by indictment, a preliminary hearing is not required. State v. Uglum, 175 Minn. 607, 222 N. W. 280; State v. Wallace, 279 Minn. 196, 156 N. W. (2d) 206. See, also, State v. Linehan, 276 Minn. 349, 150 N. W. (2d) 203.

Courts of other jurisdictions have also held that the return of an indictment obviates the necessity of a preliminary hearing and that a defendant has no complaint upon constitutional grounds because the state has chosen to proceed by indictment. State v. Jackson, 43 N. J. 148, 203 A. (2d) 1, 11 A. L. R. (3d) 841; Webb v. Commonwealth, 204 Va. 24, 129 S. E. (2d) 22; Barber v. United States (4 Cir.) 142 F. (2d)

---

[4] Minn. St. 628.32, subd. 6 (Mason St. 1927, § 10667), was amended by L. 1935, c. 194, § 1, by substituting "imprisonment for life" for "ten years imprisonment." However, the principle enunciated in these cases remains valid.

805, 807; Dillard v. Bomar (6 Cir.) 342 F. (2d) 789. But see, Blue v. United States, 119 App. D. C. 315, 342 F. (2d) 894.

We find nothing in Commonwealth v. Thomas, 353 Mass. 429, 233 N. E. (2d) 25, cited by defendant, which holds otherwise. We are not prepared to accept the argument advanced in Blue v. United States, *supra*, that a defendant has a right to a preliminary hearing for discovery purposes as well as for assurance that the prosecution is based upon probable cause.

■ The district court acquired jurisdiction over the person of defendant upon the basis of his arrest pursuant to a warrant issued by the clerk of the Municipal Court of Hennepin County. It is true that generally warrants for arrest and search warrants should be issued only on the basis of probable cause established to the satisfaction of a magistrate. State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382; Giordenello v. United States, 357 U. S. 480, 78 S. Ct. 1245, 2 L. ed. (2d) 1503; Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. (2d) 723; Barnes v. Texas, 380 U. S. 253, 85 S. Ct. 942, 13 L. ed. (2d) 818. But a warrant for arrest can also be based upon an indictment. The grand jury's determination that probable cause exists for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person charged. Giordenello v. United States, 357 U. S. 480, 487, 78 S. Ct. 1245, 1250, 2 L. ed. (2d) 1503, 1510. The decisions of this court in State ex rel. Duhn v. Tahash, *supra*; State v. Paulick, 277 Minn. 140, 151 N. W. (2d) 591; and City of St. Paul v. Tobler, 278 Minn. 269, 153 N. W. (2d) 440, holding that probable cause must be evaluated and the warrant issued by a magistrate rather than by a clerk of court do not apply in a situation where an indictment has been returned before the warrant is executed. The indictment imports probable cause. United States ex rel. Kassin v. Mulligan, 295 U. S. 396, 400, 55 S. Ct. 781, 783, 79 L. ed. 1501, 1506; Ex parte United States, 287 U. S. 241, 53 S. Ct. 129, 77 L. ed. 283; Beavers v. Henkel, 194 U. S. 73, 85, 24 S. Ct. 605, 607, 48 L. ed. 882, 886.

Affirmed.