# STATE v. ROBERT FRANCIS KING.

176 N. W. (2d) 279.

March 26, 1970—No. 41627.

*C. Paul Jones*, State Public Defender, and *John S. Gowan*, for appellant.

*Douglas M. Head*, Attorney General, and *D. P. Mattson*, County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment entered pursuant to a finding of a jury that defendant was guilty of murder in the first degree and from the order of the trial court denying his motion for judgment notwithstanding the verdict or a new trial.

Essentially the questions presented for review are: (1) Whether defendant was suffering from such a mental disorder as to be incapable of premeditation, which is one of the essentials required for a finding of guilty of murder in the first degree; (2) whether the testimony of two accomplices whose identity was discovered by an interrogation ruled inadmissible by the trial court was admissible; (3) whether testimony of two individuals who were inmates in the county jail at the time defendant was incarcerated there as to admissions made to them by defendant was admissible; and (4) whether instructions given to the jury properly defined premeditation.

Assuming that the trial court properly admitted testimony of witnesses whose testimony defendant sought to exclude, which will be discussed later, the evidence is virtually conclusive that defendant shot and killed one Floyd Joseph Haley, a Rochester, Minnesota, policeman, under the following circumstances: During the early morning of August 6, 1967, defendant and two companions, Larry Koontz and Steven Britt, were attempting to break into a bowling alley in Rochester. Defendant acted as lookout. While Koontz was trying to force open a door in the bowling alley, defendant noticed a patrol car coming into the bowling alley parking lot. Koontz was armed with a .25-caliber pistol. Defendant told Koontz and Britt to run toward defendant's car, which was parked alongside the road. Koontz testified that defendant said to him that if the cop came over there

defendant would kill him. Koontz and Britt ran to the car and hid in thick weeds 20 to 25 feet back from the road. Defendant hid in weeds close to his car. Officer Haley stopped his car some 8 to 10 feet from defendant's car, got out, and walked to the car with a flashlight in his hand. As Haley was returning to his car, defendant jumped up and said, "Reach." Defendant then yelled for Koontz and Britt to help him get the officer's gun. They removed Haley's gun from its holster. As Koontz and Britt were walking away, they heard three shots. Defendant had discharged the police revolver three times; two of the shots struck the body of Haley, killing him instantly. Koontz testified that before shooting Officer Haley defendant had said, "You know, you shouldn't have walked down there," and the officer had replied that he knew that now.

Defendant then moved the patrol car and Officer Haley's body off the road. The three boys drove to Silver Lake in Rochester, where Britt threw Haley's gun into the water and Koontz threw the officer's flashlight in.

On August 21 defendant was arrested for a burglary not connected with this offense. He was interrogated by police regarding this and other burglaries the greater part of a day and a half and at the end of this interrogation he confessed to killing Haley. He led the officers to the place where the boys had thrown the revolver into the lake and it was recovered. It was during this interrogation that the identities of Koontz and Britt were discovered by the officers. After a lengthy pretrial hearing the court suppressed defendant's confession and the tangible evidence discovered as a result of such interrogation. On appeal by the state we affirmed the trial court's suppression of this evidence. State v. King, 279 Minn. 225, 156 N. W. (2d) 742.

■ From the record of the pretrial hearing held pursuant to State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3, it seems quite clear that defendant is suffering from a serious mental disorder. He was examined by Dr. Edward Litin, a psychiatrist from the Mayo Clinic at Rochester, Minnesota,

and by other psychiatrists. Dr. Litin testified that defendant was suffering from schizophrenia. He explained schizophrenia as follows: Schizophrenics' interpretation of reality is impaired and they have difficulty relating to other people. They are cold and aloof and when talking to a schizophrenic a person senses a lack of communication. Dr. Litin said schizophrenia is what is commonly known as split personality. One observes emotions in schizophrenics that one would not expect. He also diagnosed defendant as suffering from paranoia, which means that one is suspicious of his environment and fears others are against him. Other psychiatrists and psychologists testified as to defendant's mental condition. They said he had great anxiety and tended to act impulsively under stress. Defendant has had a troubled life from an early age, and his mental illness appears to be the result of his relationship with an extremely cruel father whom defendant apparently justifiably hates. Dr. Litin was of the opinion that defendant, even though mentally disturbed, could distinguish between right and wrong and knew what he was doing. The court submitted this issue to the jury under the following instruction:

"The law states that no person shall be tried, sentenced, or punished for any crime while in a state of idiocy, imbecility, lunacy, or insanity so as to be incapable of understanding the proceedings or making a defense.

"Now with respect to insanity, I instruct you as follows, that the statute further reads: 'But the person shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason from one of these causes as not to know the nature of his act or that it was wrong.'

"Now, jurors, I instruct you to consider this issue of insanity under this definition in deciding whether or not the defendant Robert Francis King should be excused upon grounds of insanity for conduct which you otherwise would find to constitute a crime.

You must not find him not guilty upon the grounds of insanity unless his insanity qualifies as insanity under that definition."

In addition, the court gave a lengthy instruction on the necessity of proving premeditation in order to find defendant guilty of murder in the first degree.

In addition to Dr. Litin's testimony that in spite of his mental condition defendant knew what he was doing, there is other evidence which sustains the jury's verdict. Defendant admitted to two witnesses, Robert Hennum and Marvin B. Herring, who were inmates in the county jail when defendant was incarcerated there, and to his brother, Ronald King, that he had killed a policeman. The evidence also discloses that defendant had committed a number of burglaries and that he and his accomplices were in the process of committing a burglary at the time Officer Haley discovered them. The evidence further establishes that defendant asked for and received a .25-caliber pistol from Koontz and stated that if Haley came over to his parked car defendant was going to shoot him, and that he did exactly that after asking Koontz and Britt to join him in removing Haley's .38-caliber revolver. There is no reasonable doubt that defendant shot three times, and that two of the shots hit Haley.

In the light of this evidence we are convinced that, while the jury could conceivably have found that defendant was suffering under such a mental disorder that he could not have formed a premeditated design to effect death, they could also find that the evidence did establish premeditation. We have held in a number of cases that premeditation need not exist for any specific period of time. State v. Gowdy, 262 Minn. 70, 113 N. W. (2d) 578; State ex rel. Fruhrman v. Tahash, 275 Minn. 242, 146 N. W. (2d) 174; State v. Ware, 267 Minn. 191, 126 N. W. (2d) 429; State v. Hare, 278 Minn. 405, 154 N. W. (2d) 820, certiorari denied, 391 U. S. 925, 88 S. Ct. 1823, 20 L. ed. (2d) 663.

■ We come then to the question of whether the testimony of Koontz and Britt, as well as that of defendant's brother, was

admissible. We hold that it was. Defendant relies on Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. (2d) 441, where it was held that the physical and verbal evidence which police obtained as a result of an illegal arrest must be excluded. However, cases such as Wong Sun do not control in a situation such as we have here where no evidence was elicited or introduced as the result of illegal interrogation. The only thing that was discovered was the identity of Koontz and Britt and defendant's brother.

The precise question before us has been dealt with at considerable length by the Court of Appeals for the District of Columbia. In Smith v. United States and Bowden v. United States, 117 App. D. C. 1, 324 F. (2d) 879, the facts are practically identical to those now before us. Judge Warren Burger (now Chief Justice of the United States Supreme Court), writing for a majority of the court, said:

"These are appeals from murder and robbery convictions in which there is urged upon us the novel point that the testimony of an eyewitness to the crime must be suppressed because the police learned from appellants, during a period of illegal detention, of the existence and identity of such an eyewitness. In short it is argued that because the confessions made during the 'unnecessary delay' are inadmissible, the testimony of an eyewitness to the crime must also be suppressed because the existence of the eyewitness was revealed to police by appellants during the same period of time.

\* \* \* \* \*

"Courts have gone a long way in suppressing evidence but no case as yet has held that a jury should be denied the testimony of an eyewitness to a crime because of the circumstances in which his existence and identity was learned. \* \* \*

\* \* \* \* \*

"Here no confessions or utterances of the appellants were used against them; tangible evidence obtained from appellants, such

as the victim's watch, was suppressed along with the confessions. But a witness is not an inanimate object which like contraband narcotics, a pistol or stolen goods, 'speak for themselves.' The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence."

In support of its decision the court discussed at length Payne v. United States, 111 App. D. C. 94, 294 F. (2d) 723, certiorari denied, 368 U. S. 883, 82 S. Ct. 131, 7 L. ed. (2d) 83.

Although the facts are somewhat distinguishable in McLindon v. United States, 117 App. D. C. 283, 329 F. (2d) 238, and Smith v. United States, 120 App. D. C. 160, 344 F. (2d) 545, they might be construed to hold contrary to the Smith-Bowden opinion. But Brown v. United States, 126 App. D. C. 134, 375 F. (2d) 310, certiorari denied, 388 U. S. 915, 87 S. Ct. 2133, 18 L. ed. (2d) 1359, clearly reaffirmed the Smith-Bowden decision, assuming an opposite holding had been adopted in the two prior cases. In a special concurring opinion, Judge Burger said (126 App. D. C. 142, 375 F. [2d] 318):

"I concur fully in Judge Fahy's opinion, but it seems to me note should be taken of what I consider a misreading of my opinion in Smith and Bowden v. United States, 117 U. S. App. D. C. 1, 324 F. 2d 879 (1963). The dissent seems to view each fact and factor recited in that opinion as critical and decisive to the holding.

"Of course, that is not so. For example, it was never intended in *Smith-Bowden* to suggest that the time factor for the interaction of 'will, perception, memory and volition' was significant.

This interaction in one case may occur in 10 seconds or 10 minutes; in another it may be 10 months, depending on myriad factors not relevant to the decision to testify. The critical aspect of *Smith-Bowden* is that live witnesses are not 'suppressed', as inanimate objects may be. When an eyewitness is willing to give testimony, under oath and subject to all the rigors of cross-examination and penalties of perjury, he must be heard. How he came to be in court is a matter which goes only to the weight, not the admissibility, of his testimony."

We are persuaded that the holdings of Smith-Bowden and Brown state the most sensible rule. Here no evidentiary matter was used that came to light as the result of illegal interrogation. The only thing that was of any help was the discovery of the identity of Koontz and Britt and the fact that defendant's brother had information regarding the commission of the offense. We think the evidence of these witnesses was properly admitted.

■ Defendant further contends that the court erred in refusing to suppress statements given by him to Herring and Hennum when they were in the county jail together. Here defendant relies on Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. ed. (2d) 246. The facts in Massiah and those now before us are not at all similar. In Massiah, admissions made by defendant in the absence of counsel were heard by a government agent through use of a transmitter he had hidden in an accomplice's automobile without defendant's knowledge. In the case now before us the statements made by defendant to the fellow-inmates of the county jail were voluntarily given. We know of no rule that would exclude such evidence. The same is true of admissions voluntarily made by defendant to his brother.

■ After the jury had retired to deliberate, they returned for further instructions as to the definition of premeditation. The court then instructed the jury as follows:

"Now the premeditation is an essential element of the one

crime, first-degree murder, and it must be proved in order to find a person guilty of first-degree murder—it is one of the elements that must be proved—and that premeditation is as follows: 'Premeditation means to consider, plan, or prepare for, or determine to commit the act referred to prior to its commission.' I will reread that. 'Premeditation means to consider, plan, or prepare for, or determine to commit the act referred to prior to its commission.' "

Defendant claims this charge was more limited than the instruction first given. It is true that the definition given by the court during the jury's deliberations is not identical to the instruction given prior to the submission of the case to the jury. However, it did encompass a proper definition of premeditation and we can see no merit to this argument.

Under all the circumstances we are convinced that the decision must stand.

Affirmed.