# STATE v. JAMES DALE AMBUEHL.

176 N. W. (2d) 893.

April 24, 1970—No. 41874.

*Burns, Burns, Rawlings & Burns* and *Michael Burns,* for appellant.

*Douglas M. Head,* Attorney General, and *Darrell C. Hill,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the district court adjudging defendant, James Dale Ambuehl, guilty of the crime of burglary in violation of Minn. St. 609.58, subd. 2(3).

At approximately 2 a. m. on February 26, 1968, Walter Stearns and Rick McDonald broke into the Sauk Rapids Hardware Store by using a crowbar to pry open the back door. They went directly to the cash register from which they obtained $10. They then broke up the register in an unsuccessful attempt to find more money. Stearns and McDonald then went to the front of the store where they took 12 guns from a rifle rack and along with assorted ammunition brought them outside. Upon reentering the store, they attempted to force open a safe in the owner's office by using a crowbar, drills, and a punch, but were unsuccessful.

They left the store at about 4 a. m. Stearns admitted his participation in the burglary and testified that defendant was also a party to it.

Defendant was arrested, indicted, and tried before a judge and jury, and was found guilty. At the time of defendant's arraignment the state gave notice, pursuant to State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167, of its intent to introduce evidence of additional crimes of which defendant was purportedly guilty.[1]

Defendant became a member of the Sauk Rapids Police Department on October 10, 1967. On the night of February 25, 1968, he was working the late night shift from 11 p. m. to 7 a. m. Consequently he was on duty and patrolling in the town's only police car during the time of the burglary involved here.

Stearns testified that he saw defendant about 11 p. m. February 25 in front of a "beer joint" in Sauk Rapids. From there he and McDonald followed him to the police station where defendant told them to come back about 2 a. m. (on the 26th). It is not apparent whose idea it was to burglarize the hardware store, but, in any event, Stearns and McDonald met defendant at the station around 2 a. m. Defendant then told them that he would warn them of any trouble by going to the other end of the town and turning on his siren. Stearns and McDonald then went to the hardware store.

Stearns testified that after they left the hardware store and placed the stolen goods in his car, he and McDonald met defendant at the city dump. He said defendant removed the crowbar from Stearns' car and placed it in the police car under the front seat; and that defendant was fearful that someone might realize

---

[1] The additional crimes specified were the burglaries of Scherer Speed Wash on February 7, 1968; Bartley Supply Company on February 8, 1968; and Gronseth Directory Service, Inc., Sentinel Publishing Company, and Tanner Systems, Inc., all on February 10, 1968. At defendant's trial the only evidence that he took part in these other crimes was the testimony of Walter Stearns. In addition to implicating defendant in the burglaries mentioned in the Spreigl notice, Stearns testified that defendant also helped him in the Mueller-Doerner burglary.

his participation in the crime, so he asked Stearns to take one of the shotguns that had been stolen and fire it into the windshield of the police car while defendant crouched below the dashboard to escape injury.

Because none of the ammunition taken from the store fit the shotgun, Stearns said, defendant took the riot gun from the police car, removed two of the shells, and placed them in the stolen shotgun. Stearns further testified that McDonald got in the Stearns' car with Stearns; that McDonald drove while Stearns sat in the back seat, leaning out the window with the shotgun; that they began to drive forward and the defendant followed in the police car. Defendant then turned on the police car's spotlight, which was the signal for Stearns to fire. The resultant blast hit the windshield and shattered it.

Defendant then called a night answering service on the police radio and told Mrs. Martha Hahn, the operator, that he was in a high-speed chase after persons he suspected of burglary.

Mrs. Hahn testified that she had operated the answering service for the sheriff, fire department, and police department for about 5 years; that she had heard high-speed chases a number of times; and that the background noises in this case were not what she normally heard. She stated that in high-speed chases she could hear the wind whistling but at this time she heard nothing. She said that defendant in a low voice said that he had been fired upon and that he was injured. She immediately called Police Chief Arthur Daniels. He told her to call the other two Sauk Rapids policemen, the State Crime Bureau agent located in St. Cloud, and an ambulance.

Daniels testified that he went out to the city dump and found defendant sitting in the police car, which was facing north on the left side of the road with its lights and flasher on. Defendant at that time claimed that he had glass in his eyes. When the ambulance arrived, defendant was taken to the hospital where his eyes were rinsed by a nurse. The nurse testified that there was nothing wrong with defendant, but that there were some small

fragments in his eyes that could have been glass. Daniels and another policeman testified that defendant's eyes appeared normal and that they were not puffy or red.

Daniels and the other officers searched the area of the dump and found two expended shotgun shells. He and two other officers drove the police car back to the station and then searched the car, discovering the crowbar and two pieces of shot. He turned these items over to the State Crime Bureau. He also examined the riot gun and found two shells missing, but noted that the gun had not been fired.

Barton Epstein, a laboratory analyst for the State Crime Bureau, testified that he examined the crowbar and chips of paint taken from the back door of the burglarized hardware store. He found traces of paint on the crowbar that matched the paint on the door and concluded they came from a common source.

James Lansing, also a laboratory analyst for the State Crime Bureau, testified that he examined the crowbar and dents in the safe door and found that the crowbar made the same type of impressions as were found in the safe door. He also examined the shotgun shells found at the scene of the crime. He determined that the shells had been in the riot gun that was in the police car Ambuehl was driving and that the stolen Browning automatic shotgun could have fired the shells, although it was impossible to make an exact determination.

At the trial the only evidence that defendant took part in other crimes was the testimony of Stearns, who implicated defendant in the burglaries referred to in the Spreigl notice. He also testified that defendant helped him in the Mueller-Doerner burglary, which apparently took place the same night as the hardware store burglary. It is conceded that the last-named burglary comes within the exception of Spreigl and therefore no notice was required. No objection was made to any of this evidence when it was offered.

At the close of the state's case, defendant moved for a mistrial

on the ground that the state had failed to prove that defendant was connected with any prior crime. The court denied the motion for a mistrial but stated that he would instruct the jury that evidence consisting only of testimony of an accomplice was legally insufficient to connect defendant with other crimes under Minn. St. 634.04. A short time later the court informed the jury that all of Stearns' testimony purporting to connect defendant with other burglaries was stricken. He again stated this fact in his charge and instructed the jury to disregard all testimony concerning other crimes.

After the jury returned a verdict of guilty, defendant moved for a new trial on the ground that in introducing evidence of prior crimes the state failed to comply with the procedural requirements set forth in State v. Billstrom, 276 Minn. 174, 149 N. W. (2d) 281. The motion was denied.

The pertinent issues as we see them are whether the trial court committed reversible error in denying defendant a new trial and in failing to instruct the jury as to the limited purpose for which testimony pertaining to alleged similar offenses by the defendant could be received.

In a memorandum accompanying the order denying defendant's motion for a new trial, the trial judge stated that the testimony of the accomplice Stearns as to the other burglaries "pulled" by him with the aid of defendant came into the record without objection on the part of defendant or any request for clarification of the purpose of the testimony, without any request for a simultaneous instruction to the jury by the court, and without a motion that the testimony be stricken. According to the memorandum, the only relief sought by defendant in that respect was the motion for a mistrial at the end of the state's case and a request with regard to instructions concerning the testimony as to the other burglaries. With respect to that request, it was the trial judge's position that while defendant's requested instruction was not given literally, it was given in substance. The jury was instructed that Stearns' testimony as to defendant's

involvement in other burglaries was stricken and was to be completely and entirely disregarded.

The trial judge stated in his memorandum that no request was made for the instructions set out in State v. Billstrom, *supra,* and that while the instructions referred to in Billstrom seem appropriate where evidence of other crimes has been properly received, the evidence as to defendant's involvement in the other burglaries was stricken from the record and thus was put to no use by the jury. The trial judge also said that it is implicit in the Billstrom rule that a jury is capable of understanding that evidence of other crimes may be used for a limited purpose and if a jury is capable of understanding and applying that principle, it must also be capable of completely disregarding testimony when it is told it must do so. We agree with this analysis and see no error in the instructions as given.

It is clear that the jury also understood from the court's instructions that it could not base a finding that defendant was guilty of the crime charged on the testimony of the accomplice unless that testimony was corroborated by other independent evidence. On the record the jury could properly find, as it did, that there was sufficient corroboration.

In view of that fact and the obvious care on the part of the trial court to accord defendant a fair and impartial trial, the judgment appealed from must be affirmed.

Affirmed.