## STATE v. JAMES HAROLD JOHNSON.

192 N. W. (2d) 87.

November 12, 1971—No. 42785.

408

*John S. Connolly* and *Harrison P. Dilworth III*, for appellant.
*Warren Spannaus*, Attorney General, *John M. Mason*, Solicitor General, *Robert F. Carolan* and *Eldon G. Kaul*, Special Assistant Attorneys General, for respondent.

RONALD E. HACHEY, JUSTICE.*

Defendant appeals from a judgment of conviction of murder in the third degree and kidnapping. An indictment was returned by the grand jury of Rice County on October 10, 1969, charging defendant with the crimes of murder in the first degree and kidnapping. On motion of defendant, venue was changed to Olmsted County. After numerous pre-trial motions were heard and ruled upon, the trial commenced on February 13, 1970, and the jury's verdict was returned on March 20. Defendant was immediately sentenced to a prison term not to exceed 40 years. There was no motion for a new trial, and on September 14 this appeal was filed alleging 17 specific errors which occurred during trial as grounds for reversal or, in the alternative, for a new trial.

Sandra Meinke lived on a farm with her parents and family near Webster, Minnesota. Some time after 5:45 p. m. on August 31, 1969, Sandra was given permission to drive her motorbike to a neighbor's farm to pick up a younger sister and bring her home. A short time later, Sandra appeared at another neighbor's farm to inquire about her sister. Those neighbors informed Sandra that they had not seen her sister. Sandra was then seen on her motorbike going in the direction of her home.

Shortly thereafter, defendant's truck was observed as it abruptly stopped and backed into the driveway of the farm where Sandra had made her last inquiry. At that time there were no passengers with defendant. The truck remained in the driveway a few minutes and then proceeded down the same roadway, following Sandra some distance back. Within a half hour thereafter defendant's truck was observed by Sandra's mother as it drove past the Meinke farm. Other witnesses noticed the same truck at approximately 6:30 p. m. after it had passed the Meinke farm. At approximately 6:45 p. m. defendant's truck was again

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

seen near the intersection of Highway No. 13 and LeSueur County Road No. 28, in the vicinity of Lake Pepin, a distance of approximately 15 miles from Sandra's home. At that time a witness observed a girl in the truck with defendant. Attention was drawn to her because of her facial contortions. That witness then observed defendant make an abrupt right turn, proceeding toward Heidelburg, Minnesota.

Defendant had spent the afternoon in his gas station which he operated at St. James, Minnesota, some 88 miles distant from the Meinke farm. He had left his station at approximately 4 p. m. on August 31 and was seen driving in the direction of Mankato, Minnesota. He arrived at his home at Prior Lake at approximately 8:10 p. m. that same evening.

Sandra was never again seen alive. Her partially nude body was found on September 11 in an undisturbed wooded area near Lake Pepin. A ball-type earring was still attached to her right ear, but a search of the area failed to produce a matching earring. Cause of death was concluded to be a skull fracture.

Defendant was told by his brother on September 1, the day after Sandra's disappearance, that certain people were looking for a truck matching a description of defendant's and that a visit might be expected from the police. During the few days that followed, defendant got rid of the camper part of his truck by burning it at a dump near St. James, and he replaced the truck with a newer model. Defendant's old truck was impounded on September 21, and a thorough search of the interior resulted in finding an earring which matched the one found on Sandra's body. Also found were several hairs in the cab of the truck which compared with the hairs taken from Sandra's head in eight different respects, resulting in an opinion of high probability that the hairs found were originally from Sandra's head. Defendant was arrested on September 23.

■ Defendant challenges the testimony of three witnesses, Lloyd Sandberg, Steve Westman, and Kenneth Christman, as inadmissible because learning of their identity was the product

of an illegally obtained statement. Defendant was arrested by agents of the Minnesota Bureau of Criminal Apprehension. En route to jail, he stated to one of the agents that he had destroyed his camper in St. James and that he had been in St. James on August 31. An incomplete Miranda warning had been given defendant, and this testimony was ruled inadmissible at the Rasmussen hearing. Defendant contends that, if he had not made the statements to the agent, the identity of his gas station employees would not have been established.

The testimony of a factual witness is admissible even though his identity is discovered as a result of disclosures made by the accused during an illegal detention and interrogation. Brown v. United States, 126 App. D. C. 134, 375 F. 2d 310 (1966), certiorari denied, 388 U. S. 915, 87 S. Ct. 2133, 18 L. ed. 2d 1359 (1967) ; Smith v. United States, 117 App. D. C. 1, 324 F. 2d 879 (1963), certiorari denied, 377 U. S. 954, 84 S. Ct. 1632, 12 L. ed. 2d 498 (1964); State v. King, 286 Minn. 392, 176 N. W. 2d 279 (1970). A distinction is made between discovery of evidentiary material and discovery of the identity of witnesses. Where no evidence is introduced as a result of an illegal interrogation but only the identity of a factual witness is elicited, the principle regarding the "fruit of the poisonous tree" doctrine, enunciated in Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. 2d 441 (1963), is inapplicable.

"* * * [A] witness is not an inanimate object which like contraband narcotics, a pistol or stolen goods, 'speak for themselves.' The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence." Smith v. Unit-

ed States, 117 App. D. C. 1, 3, 324 F. 2d 879, 881, quoted by this court in State v. King, 286 Minn. 392, 398, 176 N. W. 2d 279, 283.

Furthermore, there is ample evidence to support a conclusion that the identity of the three witnesses in question was obtained from sources independent of defendant's interrogation. It appears that crime bureau agents talked to defendant's wife, and it was she who stated that defendant had junked his camper near St. James. It appears that one of the agents knew that defendant owned a gas station in St. James where these witnesses were employed. Another agent had learned that defendant had been at his station on August 31. Defendant's conclusion that his conversation was the only source of information concerning the identity of those witnesses is conjectural at best.

■ During trial defendant attempted to introduce a film taken from within an automobile passing a farm driveway upon which a pickup truck with a camper unit was parked. Defendant also attempted to introduce results of an experiment under conditions allegedly similar to those at the time Sandra was abducted in an effort to prove that paint on the earring found in the cab of defendant's truck could not have been paint from the inside of the cab. It appears that paint on the earring is of little significance inasmuch as the real issue was whether or not the earring belonged to Sandra. Relative to the use of the camera, there were serious problems apparent to the court such as lack of depth of perception, the restricted field of view of the camera, and the bouncing of the camera due to the rough road. Both the viewing of the film and disclosure of the results of the experiment with an earring were ruled inadmissible by the court, which rulings are cited as prejudicial error. The admission of motion pictures or evidence of experiments performed outside the jury's view rests in the sound discretion of the trial court. State v. Darrow, 287 Minn. 230, 234, 177 N. W. 2d 778, 781 (1970); State v. De-Zeler, 230 Minn. 39, 49, 41 N. W. 2d 313, 320 (1950). To overturn a trial court's ruling, a clear abuse of discretion must be both alleged and proved. In both instances it appeared that conditions

were not substantially similar to those which existed at the time in question. In denying defendant permission to show the film and the results of the earring experiment, the trial court made it clear to defendant that he would be permitted to put them in evidence if he could conduct the experiment or take pictures under conditions substantially similar to those in question. It clearly appears there was no abuse of discretion by the trial court.

■ On September 23, 1969, the day of defendant's arrest, a complaint was filed in the municipal court of Faribault, Minnesota, and the indictment was returned on October 10. On October 16, defendant requested a preliminary hearing, which request was denied by the trial court. In discussing the right to a preliminary hearing this court has repeatedly held that when the accusation of a criminal offense is by indictment, a preliminary hearing is not required. State v. Mastrian, 285 Minn. 51, 58, 171 N. W. 2d 695, 701 (1969), certiorari denied, 397 U. S. 1049, 90 S. Ct. 1381, 25 L. ed. 2d 662 (1970); State v. Mitchell, 282 Minn. 113, 122, 163 N. W. 2d 310, 316 (1968); State v. Uglum, 175 Minn. 607, 222 N. W. 280 (1928). The Federal courts have also followed this rule. Jaben v. United States, 381 U. S. 214, 85 S. Ct. 1365, 14 L. ed. 2d 345 (1965); Costello v. United States, 350 U. S. 359, 76 S. Ct. 406, 100 L. ed. 397 (1956); United States ex rel. Hughes v. Gault, 271 U. S. 142, 46 S. Ct. 459, 70 L. ed. 875 (1926); United States v. Funk, 412 F. 2d 452 (8 Cir. 1969). Nor does such a denial constitute a violation of the due process and equal protection guarantees of either the United States or Minnesota Constitutions. State v. Mastrian, *supra;* State v. Mitchell, *supra.*

■ Before defendant rested he was asked in chambers if he intended to testify in his own behalf. During discussion he was advised by the trial court that if he did take the stand, the state would have the right to inquire of him concerning his prior criminal record, which included a conviction for assault with intent to murder. Defendant then indicated that he would not testify. He made no request that a particular conviction, or con-

victions, not be alluded to if he did testify on the ground that its prejudicial effect outweighed any positive relevance to the issue of his credibility.[1]

The law has long been settled in this state establishing the right of the prosecutor to introduce evidence of a defendant's prior convictions to impeach his credibility if he takes the stand to testify in his own behalf. The prosecutor would have a right to cross-examine the defendant concerning the fact of conviction, the nature of the offense, and the identity of the defendant for purposes of affecting the weight of his testimony. Spencer v. Texas, 385 U. S. 554, 87 S. Ct. 648, 17 L. ed. 2d 606 (1967); State v. Walter, 289 Minn. 309, 184 N. W. 2d 426 (1971); State v. Gravening, 289 Minn. 501, 182 N. W. 2d 704 (1970); State v. Lipscomb, 289 Minn. 511, 183 N. W. 2d 790 (1971); State v. Everson, 286 Minn. 246, 175 N. W. 2d 503 (1970); and State v. West, 285 Minn. 188, 173 N. W. 2d 468 (1969). We hold, on appeal one cannot obtain review of an advisory opinion of the trial court.

■ During the trial, one of the witnesses for the state, Mrs. Donna Benzick, testified that she saw defendant and Sandra together shortly after Sandra was discovered missing. The testimony concerned identification of defendant in his pickup truck. After 2 hours of gruelling cross-examination by defense counsel, the witness inadvertently blurted out, "That's the man I saw but why doesn't he admit it? I mean, that's——." Upon further examination of the record it appears that the court properly admonished the jury to disregard the statement and that the evidence be stricken. In its final instructions, the court again gave the jury the same admonition.

---

[1] Minn. St. 595.07 provides: "Every person convicted of crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination, upon which he shall answer any proper question relevant to that inquiry; and the party cross-examining shall not be concluded by his answer thereto."

While such statements, inadvertently or carelessly made, are unfortunate and have no place in a lawsuit, courts are reluctant to reverse a conviction or grant a new trial solely on the basis that prejudicial error has been committed by such statement or statements. Although such statements do tend to have prejudicial effect, we must view the incident in the full context of the testimony in deciding this issue. There are occasions when the effect of testimony is so devastating to a defendant that nothing could correct the prejudicial damage. We have recently stated the general rule applicable to errors corrected by a trial court's instructing the jury to disregard certain admissions of evidence.

"* * * As a general rule, any error which may occur by reason of the erroneous admission of evidence is cured when that evidence is stricken from the record and accompanied by a clear instruction to disregard so that the evidence is not put to use by the jury. Wiley v. United States (8 Cir.) 257 F. (2d) 900; State v. Ambuehl, 287 Minn. 46, 176 N. W. (2d) 893. If, however, evidence is of such an exceptionally prejudicial character that its withdrawal from the jury cannot remove the harmful effects caused by its admission, a new trial should be granted." State v. Bergland, 290 Minn. 249, 254, 187 N. W. 2d 622, 626 (1971).

From the record it appears that defendant in this case has failed to demonstrate that the witness' remark is of such exceptionally prejudicial character. The harmful effect, if any, was corrected by the trial court. It should be further pointed out that the witness' remark was in response to a question propounded by defense counsel, and in his final argument defense counsel repeated what the witness had said, thus compounding or reinforcing the alleged error.

■ Court was recessed for several days to allow defense counsel to go to California to take the deposition of Dr. Paul Kirk, a criminologist. The court warned defendant that Dr. Kirk could only state his opinion based on the evidence in the case and could not characterize prosecution witness Bart Epstein's competence

or qualifications. This directive was disregarded, and the court consequently excluded those parts of the deposition which tended to do so.

It is within the discretion of the trial court to allow depositions to be taken in a criminal case. State v. Whelan, 291 Minn. 83, 87, 189 N. W. 2d 170, 174 (1971). It is also within the trial court's discretion to determine the manner and extent to which expert testimony may be used to impeach prior expert testimony. State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417 (1913). It would appear consistent that the out-of-court deponent be subjected to the same testimonial restrictions as is the in-court witness. The trial court was, therefore, within its discretionary bounds in rejecting portions of the deposition.

The other alleged errors raised by defendant primarily concern matters directed to the discretion of the trial court concerning the admissibility of certain evidence and matters relating to sufficiency of evidence. They appear to have been properly ruled upon by the trial court and do not merit further consideration or comment here.

From an examination of the entire record, it would appear that the proceedings at every stage of the trial were eminently fair to defendant in all respects. It further appears that he was afforded all his fundamental and constitutional rights. Viewing the record as a whole, the evidence amply supported the jury's finding of guilty beyond a reasonable doubt of both crimes of murder in the third degree and kidnapping.

Affirmed.