*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0235**

State of Minnesota,
Respondent,

vs.

Jeffrey Blake Palmer,
Appellant.

**Filed December 5, 2016
Affirmed
Schellhas, Judge**

Stearns County District Court
File No. 73-CR-15-6034

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

In this challenge to his conviction of being an ineligible person in possession of a firearm, appellant argues that the district court made prejudicial evidentiary errors at trial and abused its discretion by denying his mistrial motion. We affirm.

## FACTS

On July 5, 2015, S.O. was living at a Motel 6 in Waite Park. Shortly after midnight, appellant Jeffrey Palmer approached S.O. while she was outside smoking a cigarette and asked her for a cigarette. The two engaged in a brief conversation before S.O. returned to her room.

Later that night, Palmer went to S.O.'s room and asked for another cigarette. S.O. gave Palmer a cigarette, and Palmer disclosed that a car that he had taken from a dealership had been towed that night. He also said that he had three guns that he wished to sell so that he could secure the return of the car and asked S.O. if she could help him sell the guns. Palmer obtained S.O.'s cell phone number before leaving and returned sometime later with guns. One gun was black and another was pink and black. S.O. later learned that these two guns were in fact BB guns. Palmer also had a .380-caliber handgun tucked into the waistband of his pants. Palmer removed this gun and cocked it, causing a bullet to fall onto the bed. S.O. became frightened and told Palmer to leave.

S.O. awoke the next morning to find that Palmer had sent a series of sexual text messages to her cell phone. Fearing for her safety, S.O. called 911 and later spoke with Investigator Paul Orvis, to whom she had provided information about a planned home

invasion eight months earlier. Investigator Orvis asked S.O. to tell Palmer that she had a potential buyer for the handgun and she did. Palmer then brought to S.O.'s room the .380-caliber handgun he previously had tucked into his waistband. S.O. photographed the gun with her cell phone, Palmer left the room with it, and S.O. sent the photograph to Investigator Orvis by a text message from her cell phone. Then, at Investigator Orvis's request, S.O. telephoned Palmer, asked whether the gun was stolen, and recorded the phone call. Palmer stated that the gun was not his but had been "in a car that [he and his wife] ended up borrowing for awhile." Following the call, S.O. went to Palmer's room and obtained the gun. Before giving the gun to S.O., Palmer wiped the gun with a towel and placed it in a blue bag. At Palmer's request, S.O. left her cell phone with him, pending her return with the money from the supposed sale.

S.O. gave the gun to Investigator Orvis near the motel in the investigator's car. As they drove past the motel, Palmer was standing outside and S.O. identified him. S.O. exited Investigator Orvis's car and the investigator returned to the motel to see Palmer and a woman leaving in a gold minivan. Investigator Orvis stopped the van and arrested Palmer. Police searched the van and recovered S.O.'s cell phone along with the two BB guns that Palmer had shown S.O. in her motel room.

A jury found Palmer guilty of possession of a firearm by an ineligible person based on his possession of the .380-caliber handgun. This appeal follows.

3

# DECISION

## I

Before trial, Palmer moved the district court to prohibit the prosecution from introducing any evidence that he was guilty of additional crimes or misconduct. *See* Minn. R. Evid. 404(b). But the only bad-act evidence that Palmer specifically identified concerned the BB guns found in the van. The court ruled that the evidence was admissible because it corroborated S.O.'s testimony and any prejudice could be minimized by providing the jury with a cautionary instruction. The court therefore allowed a police officer to testify about finding the BB guns in the van and admitted photographs of the BB guns into evidence. Palmer argues that the district court erred by allowing evidence of the BB guns. He asserts that the BB-gun evidence was irrelevant because it was unrelated to his possession of the particular firearm for which he was charged with being an ineligible person in possession of a firearm.

"Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). "On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *Id.* When no constitutional right is implicated, the erroneous admission of evidence is harmless in the absence of a "reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Robinson*, 718 N.W.2d 400, 407 (Minn. 2006) (quotation omitted). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

4

would be without the evidence." Minn. R. Evid. 401. Because Palmer's trial strategy focused on attacking S.O.'s credibility, and the discovery of the BB guns in the van corroborated her testimony that Palmer had attempted to enlist her in selling the .380-caliber handgun, the BB-gun evidence was relevant. *See id.*

Palmer also argues that the BB-gun evidence was unfairly prejudicial. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. "Unfair prejudice under rule 403 is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). Palmer maintains that the evidence invited the jury to inappropriately infer that if he was the kind of person who carried and tried to sell BB guns that he represented as real guns, then he likely also possessed the .380-caliber handgun. But the district court recognized the potential for unfair prejudice and took steps to minimize the impact of the BB-gun evidence. The court directed the prosecution to refer to the BB guns as "toy guns" in contrast to the .380-caliber handgun. And after S.O. testified about the BB guns, the court instructed the jury that Palmer was not disqualified from possessing the BB guns and that it should not base its verdict on anything other than the firearm charged. Because the danger of unfair prejudice was minimal and was alleviated by a cautionary instruction, the court did not abuse its discretion by admitting the BB-gun evidence.

**II**

At the close of the state's case, Palmer moved for a mistrial on the basis that other potentially prejudicial bad-act evidence had been presented to the jury. The district court denied the motion.

On appeal, Palmer identifies six items of evidence that he claims the district court erroneously admitted: (1) the recording of S.O.'s 911 call during which she reported to the dispatcher that the gun and van were stolen and that Palmer and his wife were doing other "illegal stuff"; (2) S.O.'s recorded telephone conversation with Palmer about whether the gun he was trying to sell was stolen; (3) S.O.'s testimony that Palmer "took" the van from a dealership; (4) four references during Investigator Orvis's testimony that the handgun at issue was stolen; (5) Investigator Orvis's testimony that S.O. told him Palmer was either trying to sell or purchase narcotics; and (6) Investigator Orvis's statement that the van in which Palmer was arrested was stolen.

"[T]he district court is in the best position to evaluate the prejudicial impact, if any, of an event occurring during the trial." *State v. Bahtuoh*, 840 N.W.2d 804, 819 (Minn. 2013) (citing *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006)). "A mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different if the event that prompted the motion had not occurred." *Manthey*, 711 N.W.2d at 506 (quotation omitted). This court reviews the denial of a motion for a mistrial for an abuse of discretion. *Id.*

Palmer asserts that "[d]efense counsel objected to all this evidence," but this is not correct. The record reveals that only Investigator Orvis's testimony that the van was stolen prompted an off-the-record bench conference and an immediate cautionary instruction by the district court. Palmer's counsel did not object contemporaneously to any other evidence; he instead waited until the state had finished presenting its case before making his objection and moving for a mistrial. Despite the delay, the district court considered the mistrial motion, ruled that much of the challenged evidence was admissible, and concluded that a cautionary instruction was sufficient to cure any remaining prejudice.

The district court ruled that the first three items on Palmer's list were admissible. The court concluded that S.O.'s recorded phone conversation with Palmer was relevant because Palmer's ability to give a history of the gun enabled an inference that he possessed it. Regarding the 911 call, the district court ruled that S.O.'s statement that she believed Palmer was committing illegal acts was relevant because it explained her motive for contacting law enforcement. The court also noted that, despite having confirmed to the court that counsel and Palmer had reviewed the contents of the 911 call, counsel did not request that the call be redacted. Regarding S.O.'s statement that Palmer "took" the van, the court deemed the statement admissible because it explained her motive for contacting law enforcement.

On appeal, Palmer does not challenge these rulings on relevancy grounds. He appears to argue that the district court abused its discretion by admitting the evidence because it was unfairly prejudicial. *See* Minn. R. Evid. 403. But we hold that the court did not abuse its direction by concluding that the danger of unfair prejudice did not

7

substantially outweigh the probative value of the evidence. S.O.'s statement that Palmer "took" the van was vague and did not suggest clearly that he had done something inappropriate. As to the references to other illegal activity during S.O.'s 911 call, the court sua sponte cautioned the jury immediately after the call was played, helping to cure any unfair prejudice. The recorded telephone conversation between S.O. and Palmer was highly probative because it depicted Palmer giving an account of the gun's origin, suggesting that he possessed it. We conclude that the district court correctly determined that the first three items on Palmer's list were admissible and did not support a mistrial.

The district court agreed with Palmer that Investigator Orvis's testimony that the gun and van were stolen was not relevant. The state has a duty to caution its witnesses against making prejudicial statements. *See State v. Underwood*, 281 N.W.2d 337, 342 (Minn. 1979). But cautionary instructions may be sufficient to overcome the harm caused by unintentional references to other bad acts. *See State v. Miller*, 573 N.W.2d 661, 675–76 (Minn. 1998) (affirming the district court's denial of a mistrial when it took steps to minimize the prejudicial effect of improper statements by giving a curative instruction).

Here, Palmer does not argue that the prosecutor intentionally elicited the references about the gun being stolen. *See State v. Haglund*, 267 N.W.2d 503, 506 (Minn. 1978). In fact, defense counsel elicited one of the references during cross-examination. And the reference to buying or selling narcotics occurred only once and does not appear to have been brought to the district court's attention even at the time of the mistrial motion. *See id.* (upholding denial of a mistrial motion in part because the improper comment was "of a passing nature"). Moreover, the court took steps to minimize any prejudice from the

testimony. Immediately after Investigator Orvis stated that the van was stolen, the court instructed the jurors to disregard that testimony and reminded them not to consider any unrelated incidents or other misconduct. And the court directed the prosecutor not to reference Investigator's Orvis's statements that the gun and van were stolen in his closing argument. At the end of trial, the court also provided the jury with a final instruction that any evidence that "the defendant may have been engaged in other misconduct . . . is not to be used to prove the character of the defendant or that the defendant acted in conformity with such character" and that the jury must not "convict the defendant on the basis of other unrelated incidents or misconduct." *See State v. Johnson*, 291 Minn. 407, 415, 192 N.W.2d 87, 92 (1971) (stating the general rule that "any error which may occur by reason of the erroneous admission of evidence is cured when that evidence is stricken from the record and accompanied by a clear instruction to disregard so that the evidence is not put to use by the jury").

Palmer argues that the curative instructions provided to the jury were futile, citing supreme court cases that express doubt about the effectiveness of curative instructions in some instances. *See State v. Caldwell*, 322 N.W.2d 574, 590–91 (Minn. 1982) ("[W]here the impact of the prejudicial remark may be such as to impart to the minds of the jury substantial prejudicial evidence not properly a part of the case, it is taking too much for granted to say its effect can be removed by an instruction from the court." (quotation omitted)); *State v. Huffstutler*, 269 Minn. 153, 156, 130 N.W.2d 347, 349 (1964) ("It is true that the trial court instructed the jury to disregard the prejudicial statement, but we do not think that that admonition was sufficient to repair the damage."). But this court has

recognized that "doubts about instructions have not held sway in Minnesota courts, which in the years since *Huffstutler* have adopted a presumption that jurors follow instructions." *State v. McCurry*, 770 N.W.2d 553, 558–59 (Minn. App. 2009) (citing *State v. Hall*, 764 N.W.2d 837 (Minn. 2009)), *review denied* (Minn. Oct. 28, 2009). Given Palmer's failure to assert timely objections to the evidence, we conclude that the district court did not abuse its discretion by relying on curative instructions.

Palmer also asserts that the district court's final cautionary instruction was not specific enough because it "did not tell the jury which other incidents were 'unrelated.'" The court has "considerable latitude" in selecting the language used in jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). But "a district court abuses its discretion if the jury instructions confuse, mislead, or materially misstate the law." *State v. Taylor*, 869 N.W.2d 1, 14–15 (Minn. 2015). Because Palmer did not object to the instruction at trial, our review is limited to plain error. *Id.* at 15. The plain-error standard requires the defendant to show: (1) an error; (2) that is plain; and (3) that affected his substantial rights. *State v. Matthews*, 779 N.W.2d 543, 548 (Minn. 2010). "An error is plain if it is clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *Id.* at 549.

We conclude that the district court's general instruction that other incidents of misconduct should be disregarded was not plainly erroneous. The court had instructed the jury previously not to consider the stolen nature of the gun and van. Any confusion as to what misconduct was being referenced in the final instruction was therefore likely minimal. The general language used in the instruction was appropriate because specifically

10

identifying the improper statements again would have risked calling even more attention to them.

**Affirmed.**