**STATE of Minnesota, Respondent,**

v.

**Michael Brian DUNKEL, Appellant.**

**No. C9–90–1066.**

Court of Appeals of Minnesota.

March 5, 1991.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Earl E. Maus, Cass County Atty., Walker, for respondent.

John C. McNulty, Marcy S. Wallace, Charlotte M. Reed, McNulty & Wallace, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Michael Dunkel challenges his conviction for criminal sexual conduct in the third degree. He argues that the court erred by denying a new trial based on improperly admitted testimony and an erroneous jury instruction. We affirm.

## FACTS

On May 16, 1989, nineteen-year-old S.A. went to appellant's residence in rural Cass county to babysit the two Dunkel children, ages 8 and 5. Appellant and his wife were away from home during the day as part of their employment with separate airlines based in the Twin Cities.

S.A. gave the following account of the evening's events:

When appellant arrived home at approximately 9:15–9:30, he told S.A. that he wanted to talk to her and went to check on the children. When he returned, appellant offered a beer to S.A. and they went out to the porch to talk. While on the porch, they discussed personal topics including S.A.'s fiancee and the people S.A.'s sisters were dating. Appellant also told S.A. about an extramarital affair in which he had been involved. At approximately 10:30, appellant's wife called to check on the children.

A short time later, S.A. mentioned that she wanted to leave. After appellant protested, S.A. agreed to stay longer. Yet later, S.A. began playfully punching appellant. Appellant grabbed S.A. and forced her onto the floor. He spanked her and then sat on her legs so that she was unable to get up. S.A. initially stated that appellant was not heavy but objected when he placed his full weight on her. S.A. said, "Mike, get off me. You are heavy. It's not funny anymore."

Rather than getting off of S.A., appellant laid on her and began to kiss her neck. She protested but appellant did not stop. Instead, he put his hand under her shirt, pulled her bra off, and began touching her breasts. S.A. refused appellant's request to kiss him.

Next, appellant pulled S.A.'s sweatpants and underwear down to her ankles, told her he was going to "get [her] off" and that she had better enjoy it because he would not stop until she did. Appellant forced his fingers into S.A.'s vagina and moved them around. S.A. testified that the penetration hurt. At this point, appellant was sitting on S.A.'s legs and holding her hands with his free hand. Appellant told S.A., "Ease up S., we're not going to have sex, we're just going to mess around." S.A. testified that she did not scream or yell because she did not wish to wake the children sleeping in the next room. S.A. maintained that throughout the attack, she objected to the sexual contact.

Appellant stopped pushing his fingers into S.A. and asked her to suck on his penis. S.A. refused. Appellant next asked S.A. to help him masturbate. Again, S.A. refused. Appellant then masturbated and asked S.A. to watch. When appellant was ready to ejaculate he said, "Oh S., look, it's almost ready," at which point he ejaculated and rubbed the semen on her legs.

S.A. redressed and started to leave. Appellant asked her for a hug. S.A. complied, not wanting anything else to happen. As S.A. went to her car, appellant called after her not to run over the children's toys that were lying in the driveway.

Appellant testified as follows:

Arriving home at approximately 9:15 p.m., appellant discovered that S.A. drank one of his beers. S.A. asked him to talk to her for a while. They went out to the porch and discussed personal matters raised by S.A. During the discussion, S.A. asked him to attend a beach party. Appellant declined because he felt he did not have anything in common with S.A. Appellant's wife called at approximately 10:30 to check on the family. Appellant asked S.A. to leave at 10:45 because he wanted to go to sleep. At this point, S.A. began playfully slapping and grabbing him. Appellant became tired of the game and repeatedly asked her to leave. S.A. became angry and

told appellant that he had not heard the end of the matter as she reluctantly left the house. Appellant denies that any sexual conduct occurred.

Appellant's daughter C. testified that she did not hear anything out of the ordinary while lying awake on the night of the alleged attack. She only remembers laughter coming from the other room.

After S.A. reported the incident two days later, Deputy Crowell interviewed her and found S.A. nervous, concerned and afraid. S.A. did not undergo a sexual assault physical examination because of the two-day delay in reporting. Deputy Crowell also interviewed S.A.'s boyfriend and her co-worker and contacted appellant. The prosecution's rule 7.01 notice disclosed that appellant had given a statement. The prosecutor retracted this representation at the omnibus hearing and reiterated at the beginning of trial that it did not intend to introduce a statement against appellant.

Following these assurances and after appellant told the jury that he planned to testify, Deputy Crowell made the following statement at trial:

Q: [By the prosecutor]: Is there anything else you did during the course of this investigation?

A: I spoke briefly to Mr. Dunkel. I made an attempt to contact him for an interview. He was away. And when we were able to establish contact through the Sheriff's Department, his attorney contacted me, and I spoke to him only long enough for him to provide specifics such as his date of birth and those kinds of things for purposes of the investigation. *I did not—he declined an interview.*

(Emphasis added). Appellant declined to talk with Deputy Crowell on advice of counsel.

The court, faced with appellant's motion for a mistrial following Deputy Crowell's disclosure, stated in chambers:

What we have is a conveyance to the jury of the fact that the State in investigating the crime and prior to charge, attempted to obtain information from the [appellant] as to a disputed area of fact to give him an opportunity—is what the jury might see—to explain his version of what had occurred that night and having that opportunity, he declined to give the information. It can do nothing but prejudice the jury's mind and plant a seed that there might be something to hide.

During an in-chambers discussion the following day, the court stated:

It is the Court's view that the information as it did come before the jury was in a rather innocuous way, and I do agree with the [appellant] to attempt to give any sort of corrective instruction would just emphasize the fact that the [appellant] did not give a statement when offered the opportunity to do so.

The court, accordingly, denied the motion for a mistrial.

In its memorandum denying appellant's motion for a new trial, the court explained:

While it may have been error for the deputy to make that statement, her statement was made in a brief, quiet and undramatic answer. This Court doubts that there was any impact upon the jury as a result of that testimony and, in any event, the jury had already been informed by opening statement that the [appellant] would, in fact, be testifying and he did in fact testify that he was completely innocent and that the charges were untrue.

Over objection of appellant's counsel, the trial court allowed the following exchange between the prosecutor and Deputy Crowell:

Q: [By the prosecutor]: Investigator Crowell, based on the training you've had and your experience as a law enforcement officer, do you have an opinion whether or not it's unusual for a sexual assault victim to delay in reporting?

A: Yes, I do.

Q: And what is that opinion?

A: That it is not unusual.

In response to appellant's objection to this testimony, the trial court stated in chambers:

THE COURT: Well, my recollection is that on cross-examination of the victim, questions were asked about whether she had her car there, could she leave promptly, was there a phone in her house?

[DEFENSE COUNSEL]: (Nods head).

THE COURT: The suggestion being she had the wherewithal to promptly report. I see no other significance to that line of questioning.

Appellant's trial counsel did not object to the jury instructions given by the court.

## ISSUES

1. Was appellant prejudiced by the admission of his pre-arrest, pre-*Miranda* silence?

2. Did the trial court err by admitting opinion testimony regarding the "average rape victim"?

3. Did the trial court give an improper jury instruction?

## ANALYSIS

### I.

Appellant claims that the use of his pre-arrest silence in the prosecution's case-in-chief violated his constitutional right to due process. The United States Supreme Court fashioned a continuum of when an accused's silence may be used to impeach a defendant taking the stand in his own defense. In *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), the court ruled that post-arrest, post-*Miranda* silence was inadmissible as a means of impeachment. In contrast, the court held in *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982), that post-arrest, pre-*Miranda* silence could be admitted on cross-examination to impeach. Finally, in *Jenkins v. Anderson*, 447 U.S. 231, 238–39, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980), the court determined that pre-arrest, pre-*Miranda* silence was

also properly admissible on cross-examination. The court reasoned:

> [I]mpeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial.
>
> *      *      *      *      *      *
>
> Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted.

*Id.* (citations omitted). The court reserved to the states the decision as to what extent the information could be used at trial.[1]

In *State v. Billups*, 264 N.W.2d 137 (Minn.1978), a case predating *Jenkins*, the Minnesota Supreme Court directly addressed the issue of whether pre-*Miranda* silence upon advice of counsel may be used to impeach. The *Billups* court reasoned:

> There is probably no greater reason for one given a *Miranda* warning to remain silent as to exculpatory evidence than there is for one who is warned to remain silent by his attorney. If any refinements are to be made to the precise holding in *Doyle*, they should be made by the United States Supreme Court.

*Id.* at 139. After concluding that counseled silence is tantamount to a *Miranda* warning, the court held that the use of the accused's silence was constitutionally prohibited. *Id.* *See State v. Sailor*, 289 N.W.2d 500, 503 (Minn.1980) (although admission of pre-trial silence was erroneous under *Billups*, held not prejudicial). Thus, extending the reasoning of *Billups* to the facts of this case, we conclude that the use of counseled pre-arrest, pre-*Miranda* silence in the state's case-in-chief was·erroneous.

Our inquiry does not end with a determination that the admission of appellant's counseled pre-arrest, pre-*Miranda* statement was error, however. In reviewing

---

1. Relying on *Jenkins*, this court in *State v. Olsen*, 359 N.W.2d 67 (Minn.App.1984), *pet. for rev. denied* (Minn. Mar. 13, 1985) and *State v. Folkert*, 354 N.W.2d 583 (Minn.App.1984), affirmed the use of uncounseled pre-arrest (pre-*Miranda*) silence to impeach a defendant's credibility. *Olsen*, 359 N.W.2d at 69; *Folkert*, 354 N.W.2d at 585.

a claimed violation of an accused's constitutional right [the appellate court] must independently evaluate the evidence to determine whether or not an average jury would have changed its verdict had the questioned statement been excluded.

*State v. Robinson,* 427 N.W.2d 217, 224 (Minn.1988). When deciding whether the error is prejudicial, this court must look to the record as a whole.

First, the trial court specifically found that the statement was "innocuous," "brief, quiet and undramatic." Second, the prosecution did not elicit the statement. Rather, Deputy Crowell simply volunteered the information. As the Minnesota Supreme Court stated in *State v. Johnson,* 291 Minn. 407, 192 N.W.2d 87 (1971):

> While such statements, inadvertently or carelessly made, are unfortunate and have no place in a lawsuit, courts are reluctant to reverse a conviction or grant a new trial solely on the basis that prejudicial error has been committed by such statement or statements.

*Id.* at 415, 192 N.W.2d at 92. *See State v. Haglund,* 267 N.W.2d 503, 506 (Minn.1978) (testimony of a passing nature regarding other trouble with the law not prejudicial when overwhelming evidence of guilt present); *State v. Farr,* 357 N.W.2d 163, 166 (Minn.App.1984) (relying on *Haglund,* this court found inadvertent reference to other crimes not prejudicial). Third, the prosecution did not mention the statement at any point during the trial. Indeed, in chambers the parties agreed that no one would make any reference to the remark during the remainder of the trial. Fourth, S.A. provided a very detailed account of the incident and reported the incident only two days after the alleged attack. We do not believe that on the record before this court the average jury would have changed its verdict had the statement been excluded. Therefore, we conclude that the challenged "statement"[2] was harmless beyond a reasonable doubt.

**II.**

▮ Appellant next challenges the trial court's admission of Deputy Crowell's opinion that it was not unusual for victims of sexual attack to delay reporting the crime for two to three days. We find no error in this admission. The trial court has broad discretion in making evidentiary rulings, *State v. Larson,* 389 N.W.2d 872, 874 (Minn.1986), and this court will reverse the trial court only if it abused its discretion. *State v. Kroshus,* 447 N.W.2d 203, 204 (Minn.App.1989), *pet. for rev. denied* (Minn. Dec. 20, 1989).

Relying on *State v. Saldana,* 324 N.W.2d 227 (Minn.1982) and *State v. McGee,* 324 N.W.2d 232 (Minn.1982), appellant argues that the testimony unfairly prejudiced his case because "evidence of reactions of other people does not assist the jury in its fact-finding function" and creates an "aura of special reliability and trustworthiness" surrounding the victim's testimony. *Saldana,* 324 N.W.2d at 229–30. We cannot agree.

In both *Saldana* and *McGee,* the extensive testimony regarding the ordinary symptoms and reactions of a person who had been sexually assaulted was offered by health care professionals to draw an inference between the alleged victim and the "ordinary" rape victim. *Saldana,* 324 N.W.2d at 229; *McGee,* 324 N.W.2d at 233. In this case, unlike the lengthy testimony in *Saldana* and *McGee,* the court allowed the state to ask a single question to refute the inference of late reporting raised during defense cross-examination of S.A. The state also did not argue rape trauma syndrome in closing argument. The record supports the court's reasoning and we discern no abuse of discretion.

**III.**

▮ Finally, appellant specifically challenges the following portion of the jury instructions:

> Ladies and gentlemen, the case is in your hands. Consider all the facts and cir-

---

**2.** In *State v. Skinner,* 450 N.W.2d 648 (Minn. App.1990), this court held that use of post-*Miranda* silence was a "statement" for *Rasmussen*

notice purpose. *Id.* at 651. The rule is logically applicable here as well.

cumstances shown by the evidence and give it your best judgment and best consideration. *Determine what you think the truth of the matter is and act accordingly.*

(Emphasis added). He argues that the emphasized portion of the instructions unconditionally dilutes the "beyond a reasonable doubt" burden of proof standard. We cannot agree.

"Trial courts have broad discretion in determining the propriety of a specific jury instruction. On review, the trial court's jury instructions are considered as a whole." *Johnson v. State,* 421 N.W.2d 327, 330 (Minn.App.1988), *pet. for rev. denied* (Minn. May 4, 1988) (citations omitted). Generally, a party that fails to object to jury instructions before the jury retires waives the issue for appeal. *See* Minn.R. Crim.P. 26.03, subd. 18(3).

Appellant does not dispute that his trial counsel did not object to the jury instructions at trial. Rather, he argues that the challenged instruction constitutes plain error and therefore is reviewable for the first time on appeal. The appellate court may review "errors in fundamental law" or "plain errors affecting substantial rights." *State v. Malaski,* 330 N.W.2d 447, 451 (Minn.1983); Minn.R.Crim.P. 31.02. "[A] jury instruction on burden of proof concerns a fundamental principle of law, and may be raised on appeal regardless of whether an objection was made at trial." *State v. Smith,* 448 N.W.2d 550, 554 (Minn. App.1989) (citing *State v. Williams,* 324 N.W.2d 154, 160 (Minn.1982)), *pet. for rev. denied* (Minn. Dec. 29, 1989).

The trial court instructed the jury at several points that in order to convict they had to find the defendant guilty beyond a reasonable doubt. Indeed, the instructions included a "burden of proof" instruction closely modeled on 10 Minnesota Practice, CRIM.JIG III, 3.03 (1985). Moreover, the court gave the standard presumption of innocence instruction that incorporated a substantial portion of 10 Minnesota Practice, CRIM.JIG III, 3.02 (1985).

Unlike the instruction in *State v. Tibbetts,* 281 N.W.2d 499 (Minn.1979) and *Moll*

*v. State,* 351 N.W.2d 639 (Minn.App.1984), relied upon by appellant, that directed the jury that a *reasonable construction* that the touching was for sexual satisfaction was sufficient to convict, the trial court's instructions in this case, read as a whole, properly directed the jury to search for the truth and apply the "beyond a reasonable doubt" standard.

## DECISION

Although erroneous, the introduction of testimony regarding appellant's pre-arrest, pre-*Miranda* silence was harmless beyond a reasonable doubt; the trial court did not err by allowing Deputy Crowell to answer one question regarding the ordinary rape victim; and the jury instructions were appropriate in this case.

Affirmed.