*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0608**

State of Minnesota,
Respondent,

vs.

Antonio Lamonthe White,
Appellant.

**Filed February 22, 2016
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-13-26260

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant Antonio Lamonthe White appeals his criminal-sexual-conduct conviction, arguing that the district court should have granted his motion for a mistrial after an investigating officer testified that he refused to speak to her postarrest.  Although we

conclude that the reference to appellant's silence violated his right to due process, we affirm because the error was harmless beyond a reasonable doubt.

**FACTS**

In 2013, S.T. began a romantic relationship with appellant. The relationship began to sour when appellant discovered S.T.'s learning disabilities. Appellant mocked S.T., financially exploited her, and became violent toward her. On May 28, 2013, he forcefully hit her on the forehead during an argument, causing her to seek medical attention. A few days later, he followed her onto a bus and into a sandwich shop late at night. After S.T. purchased some sandwiches, appellant directed her outside and dragged her around the neighboring area. Appellant threatened to hit her if she said anything and to throw her off a bridge. She became very frightened.

Appellant walked S.T. into a secluded area of a South Minneapolis park. She told him that she did not want to "fool around" because she was bleeding from her vagina. However, he pulled down her pants, and vaginally penetrated her with his penis. Appellant had S.T. get down on her knees, repeatedly hit her on the head, threatened to kill her, and made her suck on his penis. When S.T. tried to run, he hit her in the face and split her lip. He also "smooshed" the sandwiches on the ground.

After the incident, S.T. went to a hospital and reported what happened. A nurse collected DNA samples from her, and S.T. spoke to a police officer. She showed the officer where the incident occurred. He found a bloody tissue from her pants and the squashed sandwiches. In late July, a police sergeant interviewed S.T. The sergeant later collected a

2

DNA sample from appellant, which matched that of the sperm cell fraction from S.T.'s vaginal sample.

The state charged appellant with criminal sexual conduct in the first degree, in violation of Minn. Stat. § 609.342, subd. 1(e)(i) (2012), and two counts of criminal sexual conduct in the third degree, in violation of Minn. Stat. § 609.344, subd. 1(c) and (d) (2012), respectively. During the jury trial on the charges, the sergeant testified that, in August 2013, she learned that appellant had been arrested. The following exchange with the prosecutor immediately ensued:

> Q: And what did you do then?
>
> A: . . . I went and spoke with [appellant] while he was at Hennepin County Jail. He indicated he didn't want to talk to me.
>
> Q: Can I just stop you there? Did you draft a search warrant for some evidence?
>
> A: . . . I drafted a search warrant for a DNA sample from [appellant].

Although appellant did not object, he subsequently moved for a mistrial based upon the sergeant's testimony that he chose not to speak with her. The prosecutor responded that the testimony was "completely inadvertent," and that she had specifically instructed the sergeant not to testify about this topic. The district court denied the motion for mistrial. The jury found appellant guilty as charged.

He appeals.

The right of a person in a criminal matter to remain silent is guaranteed by both the United States and Minnesota Constitutions. U.S. Const. amend. V; Minn. Const. art. I, § 7. At trial, comment on a person's decision to exercise this right is a denial of due process, as the right to remain silent implicitly assures that there will be no penalty for silence. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245 (1976).

Where a constitutional right is violated, this court will not reverse if an error is harmless beyond a reasonable doubt. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn. 1989). Constitutional "error will be found prejudicial if there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Larson*, 389 N.W.2d 872, 875 (Minn. 1986) (quotation omitted). Conversely, "[i]f the record contains overwhelming evidence of guilt, and the statement was merely cumulative and could not have played a significant role in the jury's conviction, it is harmless." *State v. Robinson*, 427 N.W.2d 217, 224 (Minn. 1988).

We review the district court's decision not to grant a mistrial for an abuse of discretion. *State v. Spann*, 574 N.W.2d 47, 52 (Minn. 1998). "[A] mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different." *Id.* at 53.

We have ruled that introduction of an accused's counseled, prearrest silence in the state's case-in-chief is erroneous. *State v. Dunkel*, 466 N.W.2d 425, 428 (Minn. App. 1991); *see State v. Billups*, 264 N.W.2d 137, 139 (Minn. 1978) (holding that counsel-advised silence is protected to the same extent as silence following a *Miranda* warning).

4

In *Dunkel*, the investigating deputy testified that she spoke briefly to the defendant and verified his name and date of birth, but that he "declined an interview." 466 N.W.2d at 427. We concluded that, although this reference to counseled silence was error, it was harmless, because it was "innocuous," the prosecutor did not elicit the testimony, the prosecutor did not mention the statement at any point during the trial, and the victim provided a detailed account of the incident and reported it only two days after it occurred. *Id.* at 428-29; *see also State v. French*, 402 N.W.2d 805, 809 (Minn. App. 1987) (concluding that any error in admitting officer's testimony regarding defendant's postarrest, post-*Miranda* silence was harmless where officer "did not focus on, nor unduly highlight, [defendant's] silence").

In *State v. Leja*, 660 N.W.2d 459, 463-64 (Minn. App. 2003), *aff'd as modified on other grounds*, 684 N.W.2d 442 (Minn. 2004), we found that a prosecutor's cross-examination question strongly implying the defendant's postarrest silence was harmless beyond a reasonable doubt. The court explained that, although the question was not "undramatic," the defendant never answered it, the district court instructed the jury to disregard it, the question was brief, and "the jury had already heard abundant evidence of [the defendant's] failure to cooperate with" police. *Leja*, 660 N.W.2d at 463-64 (quotation omitted).

More recently, in *State v. Borg*, 806 N.W.2d 535, 543 (Minn. 2011), the Minnesota Supreme Court ruled that, during its case-in-chief, the state may introduce a defendant's failure to respond to a prearrest, pre-*Miranda* letter from police requesting an interview.

> When the government does nothing to compel a person who is not in custody to speak or to remain silent . . . the voluntary decision to do one or the other raises no Fifth Amendment issue. We hold that if a defendant's silence is not in response to a choice compelled by the government to speak or remain silent, then testimony about the defendant's silence presents a routine evidentiary question that turns on the probative significance of that evidence.

*Borg*, 806 N.W.2d at 543 (citations and quotation omitted). The court explained that there was no evidence that the defendant received the letter, it was not questioning, and it compelled nothing. *Id.* The facts of *Borg* are sufficiently different from those of *Dunkel* that the latter has continued applicability. Most notably, the request for an interview in *Dunkel* was in person and the silence was counseled. 466 N.W.2d at 427.

Appellant argues that, because the case turned on credibility, the potential "inference of concealed guilt" from his silence was so prejudicial that he is entitled to a new trial. The record contains no evidence as to whether his postarrest silence was counseled or post-*Miranda*. In light of the fact that appellant was in custody, we find that it was error to introduce it during the state's case-in-chief. *See Doyle*, 426 U.S. at 619, 96 S. Ct. at 2245 (holding that postarrest, post-*Miranda* silence was inadmissible as a means of impeachment); *cf. Fletcher v. Weir*, 455 U.S. 603, 607, 102 S. Ct. 1309, 1312 (1982) (holding that postarrest, pre-*Miranda* silence could be admitted on cross-examination to impeach); *Dunkel*, 466 N.W.2d at 428 (holding counseled, prearrest silence not admissible in the state's case-in-chief).

However, the error was harmless beyond a reasonable doubt. As noted by the district court, the reference was brief and innocuous, does not appear to have been

6

intentionally elicited by the prosecutor, and was not referred to at any other point of the trial. *See Dunkel*, 466 N.W.2d at 429. Further, S.T. provided a detailed account of the incident and reported it very shortly after it occurred. *Id.* There was also substantial physical evidence consistent with S.T.'s description. Finally, at appellant's request, the district court instructed the jury that appellant had no obligation to prove his innocence or testify. *See* 10 Minnesota Practice, CRIMJIG 3.17 (2006).

On this record, there is no reasonable possibility that the reference to appellant's silence contributed to his conviction. *See Larson*, 389 N.W.2d at 875. Therefore, the district court did not abuse its discretion in denying the motion for mistrial. *See Spann*, 574 N.W.2d at 52-53.

**Affirmed.**

7